**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company,<br><br>and<br><br>RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>*Plaintiffs,*<br><br>v.<br><br>SPORTS SOUTH LLC, a Louisiana limited liability company,<br><br>Defendant. | Case No. 4:26-cv-01135-ALM |

**DEFENDANT SPORTS SOUTH LLC'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Sports South LLC hereby answers Plaintiffs ABC IP, LLC, and Rare Breed Triggers, Inc.'s Complaint for Patent Infringement and asserts its affirmative defenses as set forth below. Defendant denies that it has infringed any valid, enforceable claim of U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, and 12,636,403, and denies that Plaintiffs are entitled to any relief. Defendant uses the same headings used in Plaintiffs' Complaint for convenience only and denies all allegations inherent or implied by those headings. Defendant denies all allegations in the Complaint that are not expressly admitted below. Any factual allegations admitted below are admitted only as to the specific admitted facts and not as to any purported conclusions, characterizations, or implications that might follow from the admitted facts.

**PARTIES**

1. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 and therefore denies them.

2. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 2 and therefore denies them.

3. Defendant admits that Sports South LLC is a Louisiana limited liability company and that it has an address at 101 Robert G. Harris Dr., Shreveport, Louisiana 71115. Defendant denies any remaining allegations in Paragraph 3.

**JURISDICTION AND VENUE**

4. Defendant admits that the Complaint purports to assert claims for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85. Defendant denies that Plaintiffs have stated any valid claim for relief or that Defendant committed any actionable infringement. Defendant denies any remaining allegations in Paragraph 4.

5. Defendant admits that this Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338.

6. The allegations in Paragraph 6 contain legal conclusions to which no response is required. To the extent a response is required, Defendant does not contest personal jurisdiction in the Western District of Louisiana for purposes of this action as filed. Defendant does not admit that personal jurisdiction is independently proper in the Eastern District of Texas apart from transfer for coordinated or consolidated pretrial proceedings in MDL No. 3176. Defendant denies the remaining allegations in Paragraph 6.

7. The allegations in Paragraph 7 contain legal conclusions to which no response is required. To the extent a response is required, Defendant admits that Plaintiffs filed this action in the Western District of Louisiana and that the action has been transferred for coordinated or consolidated pretrial proceedings in MDL No. 3176 in the Eastern District of Texas before the Honorable Amos L. Mazzant, III. Defendant denies any alleged acts of infringement and denies any remaining allegations in Paragraph 7.

## BACKGROUND

8. Defendant admits that the Complaint purports to assert direct, contributory, and induced infringement of U.S. Patent Nos. 12,038,247, 12,031,784, 12,578,159, and 12,636,403 (together, "the Asserted Patents"). Defendant denies that it has infringed, induced infringement of, or contributed to infringement of any valid and enforceable patent claims and denies any remaining allegations in Paragraph 8.

9. Defendant admits that Exhibit A to the Complaint purports to be a copy of U.S. Patent No. 12,038,247 ("the '247 Patent") and that the Complaint alleges that the '247 Patent issued on July 16, 2024. Defendant denies that each and every claim of the '247 Patent is valid and enforceable and denies any remaining allegations in Paragraph 9.

10. Defendant admits that Exhibit B to the Complaint purports to be a copy of U.S. Patent No. 12,031,784 ("the '784 Patent") and that the Complaint alleges that the '784 Patent issued on July 9, 2024. Defendant denies that each and every claim of the '784 Patent is valid and enforceable and denies any remaining allegations in Paragraph 10.

11. Defendant admits that Exhibit C to the Complaint purports to be a copy of U.S. Patent No. 12,578,159 ("the '159 Patent") and that the Complaint alleges that the '159 Patent issued on March 17, 2026. Defendant denies that each and every claim of the '159 Patent is valid and enforceable and denies any remaining allegations in Paragraph 11.

12. Defendant admits that Exhibit D to the Complaint purports to be a copy of U.S. Patent No. 12,636,403 ("the '403 Patent") and that the Complaint alleges that the '403 Patent issued on May 26, 2026. Defendant denies that each and every claim of the '403 Patent is valid and enforceable and denies any remaining allegations in Paragraph 12.

13. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 and therefore denies them.

14. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 14 and therefore denies them.

15. Defendant denies that Plaintiffs have complied with 35 U.S.C. § 287. Defendant specifically denies that merely requiring a licensee to mark establishes compliance with § 287 and demand strict proof that Plaintiffs and their authorized licensees making, offering for sale, selling, or importing articles practicing any Asserted Patent substantially and consistently complied with the applicable physical- or virtual-marking requirements. Defendant further denies that Plaintiffs provided Defendant legally sufficient actual notice of any alleged infringement before the filing of this action. Except as expressly admitted, Defendant denies the allegations in Paragraph 15.

16. Defendant denies the allegations in Paragraph 16.

## THE INVENTIONS

17. Defendant admits that a typical AR-15-pattern firearm may be considered semiautomatic. Defendant denies the remaining allegations in Paragraph 17 to the extent they purport to characterize technical operation, legal consequences, or infringement issues beyond Defendant's admissions.

18. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 and therefore denies them.

19. Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 and therefore denies them.

20. Defendant admits that the '247 and '159 Patents purport to disclose certain trigger-related mechanisms for semiautomatic firearms. Defendant denies the remaining allegations in Paragraph 20 to the extent they characterize the novelty, scope, operation, or legal effect of those patents beyond the express language of the patents, which speak for themselves.

21. Defendant admits that the ’784 Patent purports to disclose certain trigger-related mechanisms for semiautomatic firearms. Defendant denies the remaining allegations in Paragraph 21 to the extent they characterize the novelty, scope, operation, or legal effect of the ’784 Patent beyond the express language of the patent, which speaks for itself.

22. Defendant admits that the ’403 Patent purports to disclose and claim certain trigger-related mechanisms. Defendant denies the remaining allegations in Paragraph 22 to the extent they characterize the novelty, scope, operation, or legal effect of the ’403 Patent beyond its express language, which speaks for itself.

23. Defendant admits that patent claims define the scope of the inventions claimed in a patent. Defendant denies any allegation that any claim of any Asserted Patent is valid, enforceable, or infringed and denies any remaining allegations in Paragraph 23.

## THE INFRINGING DEVICE

24. Defendant admits that it has sold or offered for sale a product that incorporates the Atrius Development 3-Position Forced Reset Selector (“Atrius FRS”). Defendant denies that any such product infringes any valid and enforceable claim of the ’247, ’784, ’159, or ’403 Patents and denies any remaining allegations in Paragraph 24.

25. Defendant admits that it has offered the Atrius FRS for sale through https://www.theshootingwarehouse.com. Defendant denies that any such offer for sale infringes any valid and enforceable claim of any Asserted Patent and denies any remaining allegations in Paragraph 25.

26. Defendant admits that Paragraph 26 purports to include an image from Defendant’s website. Defendant denies any allegation that the image establishes infringement or any other liability and denies any remaining allegations in Paragraph 26.

27. Defendant admits that a user of the identified product can switch between safe, semi-automatic, and “super semi” modes. Defendant denies any purported characterization of the Atrius FRS and further denies any implication or suggestion that the Atrius FRS infringes any patents purportedly held by Plaintiffs. Defendant denies any remaining allegations in Paragraph 27.

**COUNT I – INFRINGEMENT OF THE ’247 PATENT**

28. Paragraph 28 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendant refers to its responses to the preceding paragraphs and denies any remaining allegations in Paragraph 28.

29. Defendant denies the allegations in Paragraph 29.

30. Defendant denies the allegations in Paragraph 30.

31. Defendant denies that the referenced claim chart accurately compares the Atrius FRS to claim 15 of the ’247 Patent. Defendant specifically denies that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 15, whether literally or under the doctrine of equivalents, denies that any images or annotations in the chart establish infringement, and denies any remaining allegations in Paragraph 31.

32. Defendant denies the allegations in Paragraph 32.

33. Defendant denies the allegations in Paragraph 33.

34. Defendant denies the allegations of Paragraph 34.

35. Defendant admits that it was served with Plaintiffs’ Complaint and that before Plaintiffs filed this action, Defendant had not received a cease-and-desist letter or other correspondence providing legally sufficient actual notice that Defendant allegedly infringes the ’247 Patent. Defendant denies that it infringes any valid and enforceable claim of the ’247 Patent and denies all remaining allegations in Paragraph 35.

36. Defendant denies the allegations of Paragraph 36.

37. Defendant denies the allegations of Paragraph 37.

38. Defendant denies the allegations of Paragraph 38.

39. Defendant denies the allegations of Paragraph 39.

40. Defendant denies the allegations of Paragraph 40.

41. Defendant denies the allegations of Paragraph 41.

**COUNT II – INFRINGEMENT OF THE ’784 PATENT**

42. Paragraph 42 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendant refers to its responses to the preceding paragraphs and denies any remaining allegations in Paragraph 42.

43. Defendant denies the allegations in Paragraph 43.

44. Defendant denies the allegations in Paragraph 45.

45. Defendant denies that the referenced claim chart accurately compares the Atrius FRS to claim 1 of the ’784 Patent. Defendant specifically denies that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 1, whether literally or under the doctrine of equivalents, denies that any images or annotations in the chart establish infringement, and denies any remaining allegations in Paragraph 45.

46. Defendant denies the allegations in Paragraph 46.

47. Defendant denies the allegations in Paragraph 47.

48. Defendant denies the allegations of Paragraph 48.

49. Defendant admits that it was served with Plaintiffs’ Complaint and that before Plaintiffs filed this action, Defendant had not received a cease-and-desist letter or other correspondence providing legally sufficient actual notice that Defendant allegedly infringes the

’784 Patent. Defendant denies that it infringes any valid and enforceable claim of the ’784 Patent and denies all remaining allegations in Paragraph 49.

50. Defendant denies the allegations of Paragraph 50.

51. Defendant denies the allegations of Paragraph 51.

52. Defendant denies the allegations of Paragraph 52.

53. Defendant denies the allegations of Paragraph 53.

54. Defendant denies the allegations of Paragraph 54.

55. Defendant denies the allegations of Paragraph 55.

## COUNT III – INFRINGEMENT OF THE ’159 PATENT

56. Paragraph 56 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendant refers to its responses to the preceding paragraphs and denies any remaining allegations in Paragraph 56.

57. Defendant denies the allegations in Paragraph 57.

58. Defendant denies the allegations in Paragraph 58.

59. Defendant denies that the referenced claim chart accurately compares the Atrius FRS to claim 1 of the ’159 Patent. Defendant specifically denies that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 1, whether literally or under the doctrine of equivalents, denies that any images or annotations in the chart establish infringement, and denies any remaining allegations in Paragraph 59.

60. Defendant denies the allegations in Paragraph 60.

61. Defendant denies the allegations in Paragraph 61.

62. Defendant denies the allegations of Paragraph 62.

63. Defendant admits that it was served with Plaintiffs’ Complaint and that before Plaintiffs filed this action, Defendant had not received a cease-and-desist letter or other

correspondence providing legally sufficient actual notice that Defendant allegedly infringes the ’159 Patent. Defendant denies that it infringes any valid and enforceable claim of the ’159 Patent and denies all remaining allegations in Paragraph 63.

64. Defendant denies the allegations of Paragraph 64.

65. Defendant denies the allegations of Paragraph 65.

66. Defendant denies the allegations of Paragraph 66.

67. Defendant denies the allegations of Paragraph 67.

68. Defendant denies the allegations of Paragraph 68.

69. Defendant denies the allegations of Paragraph 69.

## COUNT IV – INFRINGEMENT OF THE ’403 PATENT

70. Paragraph 70 incorporates preceding allegations and requires no separate response. To the extent a response is required, Defendant refers to its responses to the preceding paragraphs and denies any remaining allegations in Paragraph 70.

71. Defendant denies the allegations in Paragraph 71.

72. Defendant denies the allegations in Paragraph 72.

73. Paragraph 73 of the Complaint refers to “the Super Safety” which Defendant does not understand to be an accused product in this action. Accordingly, Defendant denies that any claim chart referenced in Paragraph 73 accurately compares any accused product to claim 37 of the ’403 Patent and denies any remaining allegations in Paragraph 73. To the extent Paragraph 73 is directed at a product not at issue in this case, no response is required.

74. Defendant denies that the referenced claim chart accurately compares the Atrius FRS to claim 38 of the ’403 Patent. Defendant specifically denies that the Atrius FRS, when assembled and used as intended, meets each and every limitation of claim 38, whether literally or

under the doctrine of equivalents, denies that any images or annotations in the chart establish infringement, and denies any remaining allegations in Paragraph 74.

75. Defendant denies the allegations in Paragraph 75.

76. Defendant denies the allegations in Paragraph 76.

77. Defendant denies the allegations in Paragraph 77.

78. Defendant admits that it was served with Plaintiffs' Complaint and that before Plaintiffs filed this action, Defendant had not received a cease-and-desist letter or other correspondence providing legally sufficient actual notice that Defendant allegedly infringes the '403 Patent. Defendant denies that it infringes any valid and enforceable claim of the '403 Patent and denies all remaining allegations in Paragraph 78.

79. Defendant denies the allegations of Paragraph 79.

80. Defendant denies the allegations of Paragraph 80.

81. Defendant denies the allegations of Paragraph 81.

82. Defendant denies the allegations of Paragraph 82.

83. Defendant denies the allegations of Paragraph 83.

84. Defendant denies the allegations of Paragraph 84.

## RESPONSE TO PLAINTIFFS' PRAYER FOR RELIEF

No response to the prayer for relief is required. To the extent a response is required, Defendant denies that Plaintiffs are entitled to any relief against Defendant and requests that judgment be entered in Defendant's favor, that Plaintiffs take nothing on their claims, and that all requested relief be denied.

## DEMAND FOR JURY TRIAL

No response to the demand for jury trial is required. To the extent a response is required, Defendant denies that Plaintiffs have any cognizable claim that merits resolution by a jury. Defendant demands a trial by jury on all issues so triable.

## AFFIRMATIVE DEFENSES

Defendant asserts the following defenses without assuming any burden of pleading or proof that would otherwise rest with Plaintiffs and without admitting that any defense identified below is properly characterized as an affirmative defense. Defendant reserves the right to amend this Answer and its defenses as additional information becomes known through investigation, discovery, claim construction, expert analysis, or other proceedings.

### FIRST DEFENSE – FAILURE TO STATE A CLAIM

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE – NON-INFRINGEMENT OF THE ASSERTED PATENTS

Defendant has not infringed and does not infringe any valid, enforceable claim of any Asserted Patent under any theory, including literally, under the doctrine of equivalents, directly, contributorily, by inducement, willfully, or otherwise.

### THIRD DEFENSE – INVALIDITY OF THE ASSERTED PATENTS

The asserted claims of the Asserted Patents are invalid for failure to comply with one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116, as further alleged in Defendant's Counterclaims.

### FOURTH DEFENSE – PROSECUTION HISTORY ESTOPPEL AND DISCLAIMER

Plaintiffs are estopped from construing any valid claim of the Asserted Patents to cover or include, either literally or under the doctrine of equivalents, any accused product in view of statements, amendments, arguments, admissions, disclaimers, and/or representations made to the

United States Patent and Trademark Office during prosecution of the applications leading to the issuance of the Asserted Patents.

**FIFTH DEFENSE – LACK OF ACTUAL NOTICE; LIMITATION ON PATENT DAMAGES**

To the extent Plaintiffs, their predecessors, assignees, licensees, or other authorized persons making, offering for sale, selling, or importing articles practicing any Asserted Patent failed substantially and consistently to mark those articles in compliance with 35 U.S.C. § 287(a), Plaintiffs may not recover damages for alleged infringement occurring before Defendant received legally sufficient actual notice of a specific charge of infringement concerning a specific Asserted Patent and accused product.

On information and belief, Plaintiffs and/or their licensees have made, offered for sale, or sold products that Plaintiffs contend embody one or more Asserted Patents without substantially and consistently marking those products in compliance with § 287(a), including FRT-15L3, FRT-MR3, FRT-15C3, FRT-SG3, and FRT-RD3. Merely imposing a contractual marking requirement upon a licensee does not establish actual marking compliance or reasonable efforts to ensure compliance.

Before Plaintiffs filed this action, Defendant did not receive a cease-and-desist letter or other communication providing patent-and-product-specific notice of a charge of infringement. Knowledge of a patent's existence, generalized awareness of Plaintiffs' patent portfolio, or alleged willfulness does not independently constitute actual notice under § 287(a). Accordingly, any recovery of patent damages is limited to otherwise-proven infringement occurring after legally sufficient notice. Once Defendant identifies specific unmarked articles reasonably believed to practice an Asserted Patent, Plaintiffs bear the burden of proving that those articles do not practice the patent or that marking substantially complied with § 287(a).

## SIXTH DEFENSE – EQUITABLE DEFENSES

Plaintiffs' claims for equitable relief are barred or limited by waiver, equitable estoppel, acquiescence, and/or unclean hands. Laches is asserted only to the extent legally available and not to bar patent damages incurred within the period prescribed by 35 U.S.C. § 286. Intervening rights are asserted only to the extent an asserted claim was substantively amended or newly issued through a proceeding giving rise to such rights.

## SEVENTH DEFENSE – NO EXCEPTIONAL CASE OR ATTORNEYS' FEES FOR PLAINTIFFS' CLAIMS

Plaintiffs' claims are not subject to an exceptional case finding under 35 U.S.C. § 285, and Plaintiffs are not entitled to their costs, attorneys' fees, or enhanced monetary relief.

## EIGHTH DEFENSE – LICENSE, EXHAUSTION, AND NO DOUBLE RECOVERY

Plaintiffs' claims for patent infringement are precluded in whole or in part to the extent any accused products are imported by, sold by or to, offered for sale by, made by, made for, or otherwise supplied directly or indirectly by or to any entity having an express or implied license to any Asserted Patent; to the extent Plaintiffs' claims are barred by patent exhaustion; and/or to the extent Plaintiffs seek double recovery for alleged infringement attributable to the same product, transaction, or act.

## NINTH DEFENSE – PATENT MISUSE

Plaintiffs have engaged in patent misuse by attempting to leverage the Asserted Patents to improperly monopolize a field of long-known technology, by pursuing scattershot litigation against dealers and competitors in an effort to chill lawful competition, and by seeking to extend the scope of alleged patent rights beyond lawful bounds, including by asserting claims Plaintiffs knew or should have known are invalid and not infringed. Any such misuse renders the Asserted Patents unenforceable unless and until the misuse is purged.

**TENTH DEFENSE – NO WILLFULNESS OR ENHANCED DAMAGES**

Defendant has not acted willfully. Plaintiffs cannot meet their burden to show that Defendant has the requisite knowledge or intent, or engaged in conduct beyond typical infringement, and any claim for enhanced patent damages under 35 U.S.C. § 284 is barred. Plaintiffs must prove the required knowledge and culpability separately for each Asserted Patent. Before Plaintiffs filed this action, Defendant had not received a cease-and-desist letter or other patent-and-product-specific charge that their conduct infringed any Asserted Patent. Generalized awareness of Plaintiffs, their patent portfolio, or litigation against others does not establish that Defendant knew of a particular patent and deliberately infringed a known claim.

**ELEVENTH DEFENSE – NO IRREPARABLE HARM OR BASIS FOR INJUNCTION**

Plaintiffs are not entitled to preliminary or permanent injunctive relief because they cannot show success on the merits, irreparable harm, inadequacy of legal remedies, that the balance of hardships favors an injunction, or that the public interest supports injunctive relief. Any alleged injury is fully compensable through monetary remedies, and the public interest favors competition and lawful aftermarket innovation.

**TWELFTH DEFENSE – INEQUITABLE CONDUCT**

To the extent supported by the particularized allegations in Defendant's patent-unenforceability Counterclaims, the asserted claims of the Asserted Patents are unenforceable due to inequitable conduct. On information and belief, individuals associated with the prosecution of one or more of the Asserted Patents, including at least attorney Glenn D. Bellamy and other substantively involved, knowingly withheld material prior art and/or made affirmative representations to the United States Patent and Trademark Office with the specific intent to deceive, rendering the asserted claims unenforceable.

**THIRTEENTH DEFENSE – NO CAUSATION OR DAMAGES CAUSED BY DEFENDANT**

No act or omission of Defendant was a substantial factor in bringing about any damage alleged by Plaintiffs, nor was any act or omission of Defendant a contributing cause thereof. Plaintiffs' claims are barred, in whole or in part, because any alleged damages were caused in whole or in part by the acts or omissions of Plaintiffs or other third parties, and not by Defendant.

**FOURTEENTH DEFENSE – NO CONTRIBUTORY OR INDUCED PATENT INFRINGEMENT**

Plaintiffs' claims for induced and contributory patent infringement are barred because Defendant has not knowingly induced any direct infringement, has not possessed the specific intent required for inducement, has not sold or offered for sale any component specially made or specially adapted for use in an infringement of any valid and enforceable claim, and has not sold or offered for sale any component lacking substantial noninfringing uses. Plaintiffs also cannot establish, for each Asserted Patent, an underlying act of direct infringement; Defendant's knowledge of that particular patent; Defendant's knowledge that the specifically induced acts constituted infringement; affirmative conduct specifically intended to cause infringement; or, for contributory infringement, a component satisfying every requirement of 35 U.S.C. § 271(c).

**FIFTEENTH DEFENSE – FAILURE TO MITIGATE**

Plaintiffs' claims for damages, injunctive relief, and other remedies are barred or limited because Plaintiffs failed to take reasonable steps to mitigate any alleged damages or harm.

**SIXTEENTH DEFENSE – PRECLUSION, ESTOPPEL, LAW OF THE CASE, AND EFFECT OF MANUFACTURER AND MDL DETERMINATIONS**

Plaintiffs' claims are barred, limited, or otherwise subject to reduction in whole or in part by issue preclusion, claim preclusion, judicial estoppel, law of the case, the customer-suit and manufacturer-action doctrines, and/or other principles of comity, efficiency, and coordinated

adjudication arising from prior, pending, or future determinations in related actions involving the same accused product lines, asserted patents, alleged injuries, and requested relief. Those related proceedings include, without limitation, the declaratory-judgment and related actions involving Atrius Development Group Corp., Inc. concerning the accused Atrius FRS products; Federal Circuit proceedings arising from those actions; and earlier-filed or coordinated reseller actions pending before this Court in MDL No. 3176.

To the extent this Court, the Federal Circuit, any transferor court, or any transferee court has determined or later determines issues concerning claim construction, product operation, infringement, non-infringement, validity, invalidity, prior art, unenforceability, prosecution conduct, irreparable harm, adequacy of legal remedies, balance of hardships, public interest, willfulness, inducement, damages, entitlement to injunctive relief, or any other issue common to Plaintiffs' claims against Defendant, Plaintiffs are precluded and/or estopped from relitigating those issues, taking contrary positions, or seeking duplicative, inconsistent, or broader relief against Defendant. Plaintiffs likewise are barred from reasserting arguments, claims, or requested relief that have been rejected, or that are inconsistent with positions taken or rulings entered, in the Atrius manufacturer actions, related Federal Circuit proceedings, or other earlier-filed or coordinated reseller actions in MDL No. 3176. Defendant reserves all rights to invoke the preclusive, estoppel, law-of-the-case, persuasive, or case-management effect of any such ruling, order, judgment, finding, claim construction, factual determination, or appellate decision. Defendant further reserves the right to seek appropriate coordination, stays, or other case-management relief based on overlapping manufacturer and MDL proceedings.

**SEVENTEENTH DEFENSE – NO PRE-ISSUANCE DAMAGES OR PROVISIONAL RIGHTS**

Plaintiffs may not recover patent-infringement damages for any alleged act occurring before issuance of the applicable Asserted Patent. To the extent Plaintiffs seek a reasonable royalty for pre-issuance activity under 35 U.S.C. § 154(d), such relief is barred because Plaintiffs cannot establish each statutory prerequisite, including actual notice to Defendant of the pertinent, published patent application and substantial identity between the claims of the published application and the issued patent.

**EIGHTEENTH DEFENSE – NO DIRECT INFRINGEMENT OF COMPLETED CLAIM COMBINATIONS BY RETAIL SALE OF STANDALONE COMPONENTS**

Defendant's sale or offer for sale of a standalone selector or component does not constitute direct infringement of any asserted claim requiring a complete firearm, trigger assembly, or other multi-component combination. Plaintiffs must prove that Defendant itself performed an act enumerated in 35 U.S.C. § 271(a) with respect to a product containing every limitation of the asserted claim. Assembly or use by an unaffiliated customer cannot be attributed to Defendant as direct infringement absent a legally sufficient basis.

**NINETEENTH DEFENSE – APPORTIONMENT; LOST PROFITS; PLAINTIFF-SPECIFIC DAMAGES**

Any reasonable-royalty or lost-profits award must be apportioned to the incremental value of the claimed invention, excluding the value of unpatented components, conventional firearm functionality, trademarks, marketing, goodwill, and other nonpatented features. Plaintiffs may not invoke the entire-market-value rule, recover duplicative damages through multiple Plaintiffs or overlapping patents, or recover convoyed-sales damages without satisfying the applicable legal and evidentiary requirements. Any claim for lost profits further requires proof, by the particular Plaintiff claiming the loss of demand for the patented product, absence of acceptable noninfringing

alternatives, manufacturing and marketing capacity, causation, and the amount of profit that Plaintiff would have earned.

**TWENTIETH DEFENSE – OWNERSHIP, EXCLUSIONARY RIGHTS, AND ENTITLEMENT TO RELIEF**

For each Asserted Patent and each relevant period, Plaintiffs bear the burden to establish an enforceable chain of title, ABC's ownership, the nature and scope of any rights granted to Rare Breed, and the particular Plaintiffs' entitlement to the category of damages or equitable relief sought. No Plaintiff may recover another entity's alleged loss, damages arising outside the period in which that Plaintiff held the required rights, or a duplicative recovery for the same accused act, product, or sale.

**RESERVATION OF RIGHT TO ASSERT ADDITIONAL DEFENSES**

Defendant has not knowingly or intentionally waived any applicable defenses and reserves the right to assert and rely upon other applicable defenses that may become available or apparent throughout the course of this action. Defendant reserves the right to amend, or seek leave to amend, its answer, including its affirmative and other defenses.

**COUNTERCLAIMS**

Defendant and Counterclaimant Sports South LLC asserts the following counterclaims against Plaintiffs ABC IP, LLC ("ABC"), and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Counterclaim Defendants"), and states as follows:

**NATURE OF ACTION**

1. These Counterclaims seek declaratory and related relief concerning Counterclaim Defendants' allegations that Defendant has infringed certain asserted patents.

2. These Counterclaims include patent-related claims for declarations of non-infringement, invalidity, unenforceability, and lack of entitlement to willfulness, enhanced damages, exceptional-case findings, or injunctive relief with respect to the Asserted Patents.

## PARTIES

3. Sports South LLC is a Louisiana limited liability company with an address at 101 Robert G. Harris Dr., Shreveport, Louisiana 71115. Sports South is a named defendant in Plaintiffs' Complaint.

4. Sports South is a fifth-generation family-owned wholesale distributor serving the firearms and shooting-sports industry. Founded in 1841, the company distributes firearms, ammunition, optics, parts, and accessories from hundreds of manufacturers to firearms dealers nationwide. Sports South is one of the country's oldest and largest distributors of firearms, ammunition, and accessories, with its business focused primarily on wholesale distribution and logistics rather than direct-to-consumer sales.

5. ABC IP, LLC is alleged to be a Delaware limited liability company with an address at 8 The Green, Suite A, Dover, Delaware 19901. ABC alleges to be the current owner by assignment of all right, title, and interest in and to the Asserted Patents.

6. Rare Breed Triggers, Inc. is alleged to be a Texas corporation with an address at 2710 Central Freeway, Suite 150-151, Wichita Falls, Texas 76306. Rare Breed is alleged to be the exclusive licensee of the Asserted Patents.

## JURISDICTION AND VENUE

7. This Court has subject-matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, 2201, and 2202, and under the Patent Act, because these Counterclaims arise under federal patent law and seek declaratory relief concerning Plaintiffs' claims asserted in the action.

8. An actual, substantial, and justiciable controversy exists between Counterclaimant and Counterclaim Defendants concerning whether Counterclaimant has infringed any valid and enforceable claim of any Asserted Patent and whether the Asserted Patents are valid and enforceable.

9. Venue was proper in the Western District of Louisiana, where Counterclaim Defendants filed this action. This action is presently before this Court pursuant to 28 U.S.C. § 1407 for coordinated or consolidated pretrial proceedings in MDL No. 3176. These counterclaims arise from the same transactions and occurrences as the Complaint.

## BACKGROUND

10. Counterclaim Defendants' Complaint asserts direct, induced, and contributory infringement of U.S. Patent Nos. 12,038,247 (the "'247 Patent"), 12,031,784 (the "'784 Patent"), 12,578,159 (the "'159 Patent"), and 12,636,403 (the "'403 Patent") (collectively, the "Asserted Patents").

11. Counterclaim Defendants allege that ABC owns the Asserted Patents and that Rare Breed is the exclusive licensee of the Asserted Patents.

12. Counterclaim Defendants accuse Counterclaimant of making, using, selling, and/or offering for sale a product that incorporates the "Atrius Development 3 Position Forced Reset Selector" (referred to herein as the "Atrius FRS").

13. Sports South does not design, manufacture, modify, customize, or otherwise alter the Atrius FRS. Sports South sources the Atrius FRS product directly from Atrius Development Group Corporation, Inc., the manufacturer of the product. Sports South sells the Atrius FRS in the same condition in which it is received.

14. Counterclaim Defendants allege that the Atrius FRS infringes at least the '247, '784, '159, and '403 Patents.

15. Counterclaim Defendants seek, among other relief, preliminary and permanent injunctive relief, damages, increased damages, costs, interest, attorneys' fees, and findings of willfulness and exceptional-case status.

16. All issues concerning the Asserted Patents either have been, are presently being, or will soon be addressed by this Court or other courts in related manufacturer-focused or earlier-filed reseller cases. Before this Court are two declaratory-judgment actions brought by Atrius, the manufacturer of the Atrius FRS, against Counterclaim Defendants (and various related entities). *See* Nos. 4:26-cv-00448-ALM; 4:26-cv-00984-ALM. As of the filing of these Counterclaims, ABC and Rare Breed moved for a preliminary injunction against (a) Atrius directly in the first declaratory-judgment action and (b) a set of retailer defendants similarly situated to Sports South. A hearing concerning those two preliminary-injunction motions is scheduled to occur on January 11, 2027. Thus, there exists substantial overlap of patent issues between this action and those previously brought by Counterclaim Defendants.

17. Counterclaimant denies that it has infringed any valid and enforceable claim of any Asserted Patent, denies that any Asserted Patent is valid and enforceable, and denies that Counterclaim Defendants are entitled to any relief.

**COUNT I – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE '247 PATENT**

18. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

19. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether Counterclaimant has infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '247 Patent through the sale, offer for sale, distribution, marketing, or support of the Atrius FRS.

Counterclaim Defendants have asserted that the Atrius FRS embodies technology allegedly claimed in the ’247 Patent and have accused resellers of these accused products, including Counterclaimant, of infringing at least claim 15 of the ’247 Patent.

20. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’247 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, claim 15 of the ’247 Patent requires that, in the forced reset semi-automatic mode, “rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook.” The Atrius FRS does not satisfy that negative limitation because, during operation of an AR-15-pattern firearm with the Atrius FRS installed and set to forced-reset / full-semi mode, the disconnector hook catches the hammer hook during rearward movement of the bolt carrier.

21. More specifically, during rearward travel of the bolt carrier group, the bolt carrier depresses the hammer downward about its pivot point, and once the hammer is pressed down sufficiently far, the disconnector hook engages the hammer hook. Only after the engagement does the Atrius FRS lever arm, also actuated by rearward movement of the bolt carrier, later cause disengagement of the disconnector when the trigger is forced toward the set position. Thus, the disconnector hook is not “prevented from catching” the hammer hook, as claim 15 requires.

22. By way of further example and without limitation, the Atrius FRS also does not include the claimed cam structure disclosed and described in the ’247 Patent. The ’247 Patent discloses a cam that is separate from a safety selector, a cam lobe interacting with a cam follower of a non-mil-spec trigger member, and trigger member, hammer, and disconnector components that are not standard mil-spec AR-15 components. The Atrius FRS includes a safety selector and

is designed to operate with standard mil-spec components; it does not require installation of a non-mil-spec trigger, non-mil-spec hammer, or non-mil-spec disconnector.

23. Accordingly, by way of example and without limitation, the Atrius FRS does not meet at least the limitations requiring "a cam having a cam lobe … said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member toward said set position," or the forced-reset-mode limitation requiring that "said disconnector hook is prevented from catching said hammer hook." Because the Atrius FRS does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '247 Patent.

24. Counterclaimant is therefore entitled to a declaration that it has not infringed, does not infringe, and is not liable for direct infringement, induced infringement, contributory infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the '247 Patent through any conduct involving the Atrius FRS.

**COUNT II – DECLARATORY JUDGMENT OF INVALIDITY OF THE '247 PATENT**

25. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

26. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether the asserted claims of the '247 Patent are invalid. Counterclaim Defendants assert at least claim 15 of the '247 Patent against the Atrius FRS and accuse resellers of these accused products, including Counterclaimant, of infringement.

27. At least claim 15 of the '247 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101,

102, 103, 112, and/or 116. By way of example and without limitation, claim 15 is rendered obvious by U.S. Patent No. 7,398,723 ("Blakley '723") in view of the Tommy Triggers FRT-15-3MD.

28. Blakley '723 issued on July 15, 2008, more than fourteen years before the '247 Patent's earliest asserted priority date of September 8, 2022, and qualifies as prior art under at least 35 U.S.C. § 102(a)(1). The Tommy Triggers FRT-15-3MD was also on sale before the '247 Patent's alleged priority date, as Rare Breed's own February 2022 complaint against Tommy Triggers acknowledged, and therefore likewise qualifies as prior art.

29. By way of example and without limitation, Blakley '723 discloses many limitations of claim 15, including a forced-reset trigger for use in an AR-15, a hammer, trigger member, disconnector, and cam arrangement, while the FRT-15-3MD supplies the remaining limitations concerning the three-position selector and dual standard semi-automatic / forced-reset operation. Blakley '723 and the FRT-15-3MD disclose each limitation of claim 15 and that a person of ordinary skill in the art would have had ample motivation to combine those references.

30. By way of further example and without limitation, adding a three-position selector to Blakley '723 would have been obvious because three-position selectors corresponding to safe, semi-automatic, and forced-reset or full-auto modes were standard on AR-15 and M-16 platforms and on firearms capable of simulated or actual automatic fire. A shooter would have been motivated to use such a selector because semi-automatic fire allows more precise and less ammunition-consumptive shooting, while forced-reset or full-auto mode allows a greater volume of fire.

31. Counterclaimant attaches as Exhibit G-1 a claim chart that Atrius cited in its opposition to Counterclaim Defendants' August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI

Motion), Dkt. 88 (Response in Opposition). Exhibit G-1 demonstrates that each limitation of claim 15 of the ’247 Patent was found in the prior art as of the alleged priority date.

32. Accordingly, at least claim 15 of the ’247 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimant is entitled to a declaration that the asserted claims of the ’247 Patent are invalid.

33. Furthermore, Counterclaimant seeks declaratory judgment of invalidity as to all claims of the ’247 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimant, its accused products, or its alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the Complaint against Counterclaimant. These allegations are exemplary and without limitation. Counterclaimant reserves the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the ’247 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

**COUNT III – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’247 PATENT**

34. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

35. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether the ’247 Patent is unenforceable. Counterclaim Defendants assert at least claim 15 of the ’247 Patent against the Atrius FRS and accuse resellers of these accused products, including Counterclaimant, of infringement.

36. The ’247 Patent is unenforceable due to inequitable conduct and/or related equitable doctrines. By way of example and without limitation, individuals associated with prosecution of the application that issued as the ’247 Patent, including at least Glenn D. Bellamy and Lawrence DeMonico, knew of material prior art and information and failed to disclose that information to the USPTO with the specific intent to deceive the USPTO.

37. By way of example and without limitation, the Examiner allowed the ’247 Patent after identifying Blakley ’723 as the closest prior art and determining that Blakley ’723, on its own, did not disclose certain limitations concerning a three-position selector, standard semi-automatic operation in which the disconnector catches the hammer and the user manually releases the trigger, and forced-reset operation in which the selector prevents the disconnector from catching the hammer.

38. At least Bellamy and DeMonico knew of the Tommy Triggers FRT-15-3MD, which disclosed the same limitations that the Examiner believed were missing from Blakley ’723, including a three-position selector and dual standard/forced-reset operation. The omitted Tommy Triggers FRT-15-3MD was but-for material because it included the same three-position selector and disconnector functionality the Examiner found missing from Blakley ’723.

39. The surrounding facts support a reasonable inference that the material information was withheld with specific intent to deceive, including the applicants’ submission of an extensive information disclosure statement (IDS) while failing to disclose the Tommy Triggers FRT-15-3MD device and related materials, the prosecution significance of the omitted material, and the prior litigation involving the same or overlapping forced-reset technology.

40. Counterclaimant is entitled to a declaration that the ’247 Patent is unenforceable due to inequitable conduct, infectious unenforceability where applicable, prosecution misconduct,

unclean hands, and/or related equitable doctrines. The allegations described above are exemplary and without limitation and are based on information presently available to Counterclaimant, including allegations and arguments developed in the Atrius declaratory-judgment action, proceedings involving manufacturers or resellers of other accused products, and any pleadings, briefs, and supporting material submitted in those proceedings. Counterclaimant reserves all rights to assert additional unenforceability grounds, inequitable-conduct facts, prosecution-history analyses, infectious-unenforceability theories, unclean-hands theories, and related equitable doctrines.

**COUNT IV – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’784 PATENT**

41. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

42. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether Counterclaimant has infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’784 Patent through the sale, offer for sale, distribution, marketing, or support of the Atrius FRS. Counterclaim Defendants have asserted that the Atrius FRS embodies technology allegedly claimed in the ’784 Patent and have accused resellers of these accused products, including Counterclaimant, of infringing at least claim 1 of the ’784 Patent.

43. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’784 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, claim 1 of the ’784 Patent requires an “extended trigger member locking device” that includes “a locking member” movable between locked and unlocked positions, where the locking member has both “a body portion that is movably supported” and “an

upwardly extending deflectable portion that is separately movable relative to the body portion between an extended position and a deflected position."

44. The Atrius FRS does not contain a "locking member" as claimed in the '784 Patent. At most, Counterclaim Defendants have identified the Atrius FRS lever arm as an allegedly upwardly extending deflectable portion, but the Atrius FRS does not include a separate body portion that combines with that lever arm to form the claimed locking member. Because the accused structure lacks the required body portion, there is no claimed locking member that is movable between the claimed first and second positions.

45. In the alternative, even if the safety selector were treated as the claimed body portion, the Atrius FRS still would not infringe. During operation, only the lever arm pivots when struck by the bolt carrier group after a round is fired, while the safety selector remains static due to the detent pin and does not pivot or otherwise move with the lever arm from the claimed first position to the claimed second position. Thus, Counterclaim Defendants' theory improperly attempts to stitch together the Atrius FRS's stationary safety selector and pivoting lever arm into a single claimed locking member even though the alleged combined structure does not move as the claim requires.

46. By way of further example and without limitation, the '784 Patent distinguishes between movement of the locking member as a whole and separate movement of the upwardly extending deflectable portion. Counterclaim Defendants' infringement theory collapses those distinct movements by relying on the same pivoting lever arm both as the separately movable deflectable portion and as the structure that allegedly provides the locking/unlocking movement. Counterclaim Defendants have not and cannot point to distinct movements to satisfy the claim language.

47. Accordingly, by way of example and without limitation, the Atrius FRS does not meet all limitations of claim 1. Because the Atrius FRS does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’784 Patent.

48. Counterclaimant is therefore entitled to a declaration that it has not infringed, does not infringe, and is not liable for direct infringement, induced infringement, contributory infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the ’784 Patent through any conduct involving the Atrius FRS.

**COUNT V – DECLARATORY JUDGMENT OF INVALIDITY OF THE ’784 PATENT**

49. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

50. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether the asserted claims of the ’784 Patent are invalid. Counterclaim Defendants assert at least claim 1 of the ’784 Patent against the Atrius FRS and accuse resellers of these accused products, including Counterclaimant, of infringement.

51. At least claim 1 of the ’784 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 1 is anticipated and/or rendered obvious by Blakley ’723.

52. Blakley ’723 is prior art to the ’784 Patent because it issued on July 15, 2008, years before the earliest possible priority date of the ’784 Patent.

53. By way of example and without limitation, claim 1 of the ’784 Patent is directed to an “extended trigger member locking device” having a locking member movable between locked and unlocked positions, including a body portion and an upwardly extending deflectable portion.

As apparently interpreted by Counterclaim Defendants, these concepts were disclosed in Blakley ’723 before the ’784 Patent, including the relevant locking and trigger-control structures.

54. Counterclaimant attaches as Exhibit G-2 a claim chart that Atrius cited in its opposition to Counterclaim Defendants’ August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI Motion), Dkt. 88 (Response in Opposition). Exhibit G-2 demonstrates that each limitation of claim 1 of the ’784 Patent was found in the prior art as of the alleged priority date.

55. Accordingly, at least claim 1 of the ’784 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimant is entitled to a declaration that the asserted claims of the ’784 Patent are invalid.

56. Furthermore, Counterclaimant seeks declaratory judgment of invalidity as to all claims of the ’784 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimant, its accused products, or its alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the Complaint against Counterclaimant. These allegations are exemplary and without limitation. Counterclaimant reserves the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the ’784 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

**COUNT VI – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’784 PATENT**

57. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

58. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether the ’784 Patent is unenforceable. Counterclaim Defendants assert at least claim 1 of the ’784 Patent against the Atrius FRS and accuse resellers of these accused products, including Counterclaimant, of infringement.

59. The ’784 Patent is unenforceable due to inequitable conduct, infectious unenforceability, prosecution misconduct, unclean hands, and/or related equitable doctrines. These allegations are pled in the alternative and are based on presently available information concerning Counterclaim Defendants’ prosecution conduct, enforcement campaign, alleged concealment or burying of material prior art, and assertion of related patents.

60. By way of example and without limitation, related pleadings and expert materials allege a broader pattern in which Counterclaim Defendants and their counsel failed to fairly present material prior-art records concerning Stakes ’067, Tac-Con 3MR, Bonner ’263, FRT-15-3MD, and classic gating art, while later asserting FRT-related patents in serial reseller actions. Those materials also allege concealment of prosecution activities involving related forced-reset-trigger applications.

61. Counterclaimant presently lacks the full prosecution record and discovery necessary to plead every particularized fact supporting unenforceability of the ’784 Patent, but reserves the right to amend this Counterclaim to identify additional individuals, references, omissions, misrepresentations, prosecution events, and related misconduct once those facts are developed.

62. Counterclaimant is entitled to a declaration that the ’784 Patent is unenforceable due to inequitable conduct, infectious unenforceability where applicable, prosecution misconduct, unclean hands, and/or related equitable doctrines. The allegations described above are exemplary

and without limitation and are based on information presently available to Counterclaimant, including allegations and arguments developed in the Atrius declaratory-judgment action, proceedings involving manufacturers or resellers of other accused products, and any pleadings, briefs, and supporting material submitted in those proceedings. Counterclaimant reserves all rights to assert additional unenforceability grounds, inequitable-conduct facts, prosecution-history analyses, infectious-unenforceability theories, unclean-hands theories, and related equitable doctrines.

**COUNT VII – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’159 PATENT**

63. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

64. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether Counterclaimant has infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’159 Patent through the sale, offer for sale, distribution, marketing, or support of the Atrius FRS. Counterclaim Defendants have asserted that the Atrius FRS embodies technology allegedly claimed in the ’159 Patent and have accused resellers of these accused products, including Counterclaimant, of infringing at least claim 1 of the ’159 Patent.

65. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’159 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, the asserted claims of the ’159 Patent require, among other things, both a “cam” and a “safety selector” as distinct components.

66. The intrinsic record confirms that the claimed cam and safety selector are separate structures. The specification does not treat the cam and safety selector as the same structure or as

a single commingled component, and the patent's figures consistently depict the cam as physically separate from the safety selector. Accordingly, for the asserted claims of the '159 Patent to read on the Atrius FRS, the Atrius FRS must possess a separate cam and selector.

67. The Atrius FRS does not possess separate cam and selector structures as required by the '159 Patent. The Atrius FRS lever arm moves transversely along the axis of rotation of the selector when the selector is rotated from semi-automatic position to forced-reset position. In semi-automatic mode, the lever arm is displaced from the trigger and cannot cause a reset motion; in forced-reset mode, the lever arm and selector act together to reset the trigger and control when the trigger can release the hammer. Thus, the Atrius FRS lever arm and selector cannot operate independently in the way required by Plaintiffs' reading of the '159 Patent. The Atrius FRS cannot have a functioning lever arm without a selector, or a functioning selector without a lever arm, and those two elements do not exist separately as would be required to satisfy the asserted claims of the '159 Patent. Counterclaim Defendants' own infringement theory treats the alleged cam and selector as part of a singular composite structure, which is materially different from the separate cam and selector disclosed and claimed in the '159 Patent.

68. Accordingly, by way of example and without limitation, the Atrius FRS does not meet at least the limitations requiring separate cam and selector structures. Because the Atrius FRS does not satisfy at least these limitations, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the '159 Patent.

69. Counterclaimant is therefore entitled to a declaration that it has not infringed, does not infringe, and is not liable for direct infringement, induced infringement, contributory

infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the ’159 Patent through any conduct involving the Atrius FRS.

**COUNT VIII – DECLARATORY JUDGMENT OF INVALIDITY OF THE ’159 PATENT**

70. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

71. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether the asserted claims of the ’159 Patent are invalid. Counterclaim Defendants assert at least claim 1 of the ’159 Patent against the Atrius FRS and accuse resellers of these accused products, including Counterclaimant, of infringement.

72. At least claim 1 of the ’159 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 1 is anticipated and/or rendered obvious by Blakley ’723 in view of the Tommy Triggers FRT-15-3MD.

73. The ’159 Patent is a continuation of the ’247 Patent and claims the same subject matter in relevant respects, so Blakley ’723 and the FRT-15-3MD are prior art to at least claim 1 of the ’159 Patent for the same reasons they are prior art to the ’247 Patent. Blakley ’723 and the FRT-15-3MD disclose each limitation of claim 1 of the ’159 Patent.

74. By way of example and without limitation, Blakley ’723 discloses many limitations of claim 1, including a forced-reset trigger for use in an AR-15, a hammer, trigger member, disconnector, and cam arrangement, while the FRT-15-3MD supplies the remaining limitations concerning the three-position selector and dual standard semi-automatic / forced-reset operation.

75. Counterclaimant attaches as Exhibit G-3 a claim chart that Atrius cited in its opposition to Counterclaim Defendants’ August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI

Motion), Dkt. 88 (Response in Opposition). Exhibit G-3 demonstrates that each limitation of claim 1 of the ’159 Patent was found in the prior art as of the alleged priority date.

76. Accordingly, at least claim 1 of the ’159 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimant is entitled to a declaration that the asserted claims of the ’159 Patent are invalid.

77. Furthermore, Counterclaimant seeks declaratory judgment of invalidity as to all claims of the ’159 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimant, its accused products, or its alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the Complaint against Counterclaimant. These allegations are exemplary and without limitation. Counterclaimant reserves the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the ’159 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

**COUNT IX – DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’159 PATENT**

78. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

79. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether the ’159 Patent is unenforceable. Counterclaim Defendants assert at least claim 1 of the ’159 Patent against the Atrius FRS and accuse resellers of these accused products, including Counterclaimant, of infringement.

80. The ’159 Patent is unenforceable due to inequitable conduct, infectious unenforceability, and/or related equitable doctrines. By way of example and without limitation, the ’159 Patent is a continuation of the ’247 Patent and shares a common specification, priority chain, claimed subject matter, and prosecution lineage with the ’247 Patent.

81. The same inequitable conduct that renders the ’247 Patent unenforceable also renders the ’159 Patent unenforceable because the ’159 Patent is a continuation of the ’247 Patent.

82. By way of further example and without limitation, Bellamy and DeMonico had actual knowledge of the structure, operation, public use, and on-sale activities of the Tommy Triggers FRT-15-3MD and the Rare Breed FRT-15E3 before the filing and prosecution of the application that issued as the ’159 Patent, but did not disclose those products or related materials to the USPTO. Those products are alleged to have been material to patentability because they disclosed the claimed three-position selector and forced-reset trigger functionality that was not otherwise before the Examiner.

83. The facts support a reasonable inference that Bellamy, DeMonico, and/or others associated with prosecution intentionally withheld material information from the USPTO with specific intent to deceive. At a minimum, these allegations support unenforceability under inequitable conduct and infectious-unenforceability principles.

84. Counterclaimant is entitled to a declaration that the ’159 Patent is unenforceable due to inequitable conduct, infectious unenforceability where applicable, prosecution misconduct, unclean hands, and/or related equitable doctrines. The allegations described above are exemplary and without limitation and are based on information presently available to Counterclaimant, including allegations and arguments developed in the Atrius declaratory-judgment action, proceedings involving manufacturers or resellers of other accused products, and any pleadings,

briefs, and supporting material submitted in those proceedings. Counterclaimant reserves all rights to assert additional unenforceability grounds, inequitable-conduct facts, prosecution-history analyses, infectious-unenforceability theories, unclean-hands theories, and related equitable doctrines.

**COUNT X – DECLARATORY JUDGMENT OF NON-INFRINGEMENT OF THE ’403 PATENT**

85. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

86. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether Counterclaimant has infringed, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the ’403 Patent through the sale, offer for sale, distribution, marketing, or support of the Atrius FRS. Counterclaim Defendants have asserted that the Atrius FRS embodies technology allegedly claimed in the ’403 Patent and have accused resellers of these accused products, including Counterclaimant, of infringing at least claim 38 of the ’403 Patent.

87. The Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’403 Patent, either directly or indirectly, literally or under the doctrine of equivalents. By way of example and without limitation, claim 38 recites a “trigger member.” The term “trigger member” is not an established or standard term of art for a conventional or mil-spec trigger; rather, in view of the specification, it refers to a specifically configured trigger structure disclosed as trigger member 38, including surfaces used to carry out the patent’s forced-reset operation.

88. The Atrius FRS does not have the claimed trigger member. The Atrius FRS uses a conventional mil-spec trigger and is compatible with multiple aftermarket trigger assemblies with conventional trigger-tail geometries, which lack the configured contact surfaces disclosed for

trigger member 38 in the ’403 Patent. In the Atrius FRS, rotating the selector to the forced-reset position shifts the lever arm transversely into alignment with the trigger, and it is the bolt carrier acting on that lever arm during cycling that forces the trigger toward reset. The Atrius FRS therefore does not reset the trigger through the configured hammer-to-trigger member interaction disclosed and claimed in the ’403 Patent, and the “trigger member” limitation is absent from every asserted claim.

89. Accordingly, by way of example and without limitation, the Atrius FRS does not meet at least the “trigger member” limitation of claim 38 of the ’403 Patent. Because the Atrius FRS does not satisfy at least this limitation, the manufacture, use, sale, offer for sale, distribution, marketing, or support of the Atrius FRS does not infringe and has not infringed any valid and enforceable claim of the ’403 Patent.

90. Counterclaimant is therefore entitled to a declaration that it has not infringed, does not infringe, and is not liable for direct infringement, induced infringement, contributory infringement, willful infringement, or infringement under the doctrine of equivalents of any valid and enforceable claim of the ’403 Patent through any conduct involving the Atrius FRS.

## COUNT XI – DECLARATORY JUDGMENT OF INVALIDITY OF THE ’403 PATENT

91. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

92. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether the asserted claims of the ’403 Patent are invalid. Counterclaim Defendants assert at least claim 38 of the ’403 Patent against the Atrius FRS and accuse resellers of these products, including Counterclaimant, of infringement.

93. At least claim 38 of the ’403 Patent is invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, including without limitation 35 U.S.C. §§ 101, 102, 103, 112, and/or 116. By way of example and without limitation, claim 38 is invalid for lack of written description and enablement because Counterclaim Defendants’ infringement theory stretches the claim beyond the structures and operation disclosed in the specification.

94. By way of example and without limitation, the ’403 Patent specification discloses a single trigger-member structure—trigger member 38, including a convex contact surface 58 and further contact surface 69—and a single means of forcing that trigger member to its set position, namely contact between the hammer surface and the trigger-member contact surface. The specification also treats a locking member as the only disclosed structure that holds the trigger member in the set position and prevents hammer follow in forced-reset mode because the disconnector is disabled in that mode.

95. Claim 38 is one of the broad later-added claims that omits the locking member that other independent claims of the ’403 Patent require and that the specification describes as necessary to safe forced-reset operation. If claim 38 is construed broadly enough to cover products that do not use the disclosed configured trigger member and locking-member architecture, claim 38 exceeds the written description and enablement support of the specification.

96. By way of example and without limitation, claim 38 is anticipated by Stakes ’067. Stakes ’067 and the commercial Tac-Con 3MR disclosed a hammer, disconnector, trigger member, and a selector movable among safe, semi-automatic, and assisted-reset semi-automatic modes years before the ’403 Patent.

97. By way of further example and without limitation, claim 38 is obvious over U.S. Patent No. 3,045,555 (“Stoner ’555”) in view of the ’223 Patent (“Rounds ’223”). Stoner ’555

issued more than six decades before the ’403 Patent’s earliest possible priority date, and Rounds ’223 issued on December 24, 2019, before the ’403 Patent’s alleged priority date. Stoner ’555 and Rounds ’223 disclose each limitation of claim 38.

98. A person of ordinary skill in the art would have been motivated to combine Stoner ’555 with Rounds ’223 because Rounds ’223 discloses a forced-reset device, while Stoner ’555 supplies a conventional three-position selector architecture for safe, semi-automatic, and automatic operation. Applying Stoner ’555’s three-position selector to Rounds ’223 yields conventional safe, semi-automatic, and forced-reset positions, and Stoner ’555’s method for disabling the disconnector in a third selector position would predictably operate with the Rounds ’223 disconnector because both designs turn on the same operative event: whether a disconnector catches or does not catch a hook on the hammer.

99. Counterclaimant attaches as Exhibit G-4 a claim chart that Atrius cited in its opposition to Counterclaim Defendants’ August 1, 2026 preliminary-injunction motion. *Atrius Dev. Grp. Corp., Inc. v. ABC IP, LLC, et al.*, No. 4:26-cv-00448-ALM (E.D. Tex.), Dkt. 54 (PI Motion), Dkt. 88 (Response in Opposition). Exhibit G-4 demonstrates that each limitation of claim 38 of the ’403 Patent was found in the prior art as of the alleged priority date.

100. Accordingly, at least claim 38 of the ’403 Patent is invalid under 35 U.S.C. §§ 102 and/or 103. Counterclaimant is entitled to a declaration that the asserted claims of the ’403 Patent are invalid.

101. Furthermore, Counterclaimant seeks declaratory judgment of invalidity as to all claims of the ’403 Patent that Counterclaim Defendants have asserted, or later assert, against Counterclaimant, its accused products, or its alleged conduct in this action. The prior-art-based arguments presented above address the specific claim charted or otherwise identified in the

Complaint against Counterclaimant. These allegations are exemplary and without limitation. Counterclaimant reserves the right to assert additional invalidity grounds, facts, prior art, combinations, claim-specific analyses, and statutory bases under 35 U.S.C. §§ 101, 102, 103, 112, and/or 116 for any asserted claim of the ’403 Patent, including any claims Counterclaim Defendants later identify, chart, assert, or ask to add in this action, in MDL No. 3176, or in any related proceeding.

**COUNT XII – DECLARATORY JUDGMENT OF NO WILLFUL PATENT INFRINGEMENT AND THAT PLAINTIFFS ARE NOT ENTITLED TO ENHANCED DAMAGES, AN EXCEPTIONAL-CASE FINDING, ATTORNEYS’ FEES, OR PATENT INJUNCTIVE RELIEF**

102. Counterclaimant repeats and realleges the allegations in the preceding paragraphs of its Counterclaims as if fully set forth herein.

103. An actual, substantial, and justiciable controversy exists between Counterclaimant and the Counterclaim Defendants concerning whether Counterclaimant has willfully infringed any valid and enforceable claim of any Asserted Patent, whether Counterclaim Defendants are entitled to enhanced damages under 35 U.S.C. § 284, whether Counterclaim Defendants are entitled to an exceptional-case finding or attorneys’ fees under 35 U.S.C. § 285, and whether Counterclaim Defendants are entitled to preliminary or permanent injunctive relief based on any alleged patent infringement by Counterclaimant.

104. Counterclaimant has not willfully infringed any valid and enforceable claim of any Asserted Patent. Substantial defenses of non-infringement, invalidity, and unenforceability exist for the accused Atrius FRS, as set forth above and throughout the MDL proceedings.

105. Before Counterclaim Defendants filed this action, Counterclaimant had not received a cease-and-desist letter or other correspondence from Counterclaim Defendants, any

affiliate, or their counsel providing legally sufficient actual notice of a specific charge that an identified product infringed an identified Asserted Patent.

106. Further, the Atrius FRS has not been found to infringe any claims of the Asserted Patents.

107. Counterclaim Defendants are not entitled to preliminary or permanent injunctive relief against Counterclaimant.

108. Counterclaim Defendants are not entitled to enhanced damages, an exceptional-case finding, attorneys' fees, or patent injunctive relief because Counterclaimant has substantial defenses, has not engaged in egregious conduct, has not acted with the requisite knowledge or intent for willfulness, and has not engaged in conduct that would make this case exceptional. Counterclaim Defendants' allegations that Counterclaimant's acts were willful, exceptional, and deliberately harmful are disputed and are unsupported by a sufficient showing of infringement, validity, enforceability, irreparable harm, or causation.

109. Counterclaimant is therefore entitled to a declaration that Counterclaim Defendants are not entitled to a finding of willful patent infringement, enhanced patent damages, an exceptional-case finding, patent-related attorneys' fees, or preliminary or permanent injunctive relief against Counterclaimant.

## PRAYER FOR RELIEF ON PLAINTIFFS' CLAIMS AND COUNTERCLAIMANT'S COUNTERCLAIMS

WHEREFORE, Defendant and Counterclaimant Sports South LLC respectfully requests that the Court:

A. Enter judgment in favor of Defendant and against Plaintiffs on every claim asserted in the Complaint;

B. Order that Plaintiffs take nothing on their claims, dismiss those claims with prejudice, and denies all declaratory, injunctive, monetary, enhanced, equitable, and other relief requested by Plaintiffs;

C. Enter judgment in favor of Counterclaimant and against Counterclaim Defendants on Counterclaimant's Counterclaims;

D. Declare that Counterclaimant has not directly infringed, induced infringement of, contributed to infringement of, or willfully infringed any valid and enforceable claim of any Asserted Patent, whether literally, under the doctrine of equivalents, or otherwise;

E. Declare that the Atrius FRS and Counterclaimant's sale or offer for sale of those products or products that incorporate the Atrius FRS do not infringe any valid and enforceable claim of the Asserted Patents under any theory asserted by Counterclaim Defendants;

F. Declare the asserted claims of the Asserted Patents invalid for failure to satisfy one or more requirements of Title 35 of the United States Code, as established through these proceedings;

G. Declare the asserted claims of the Asserted Patents unenforceable to the extent established through these proceedings;

H. Determine that any recovery of patent damages is barred or limited under 35 U.S.C. §§ 154(d), 286, 287, and other applicable law, including because of any failure to mark, absence of legally sufficient pre-suit actual notice, absence of any statutory basis for pre-issuance damages, failure to apportion, lack of causation, patent exhaustion, license, and prohibition against duplicative recovery;

I. Deny Plaintiffs any finding of willfulness, enhanced damages, entitlement to attorneys' fees, or preliminary or permanent injunctive relief;

J. Award Counterclaimant its taxable costs under Federal Rule of Civil Procedure 54(d)(1), 28 U.S.C. § 1920, and other applicable law;

K. If the Court determines that the applicable statutory standards are satisfied, award Counterclaimant its reasonable attorneys' fees under 35 U.S.C. § 285 and other applicable law;

L. Award post-judgment interest on any monetary award, including any award of fees or costs, as provided by law; and

M. Grant Counterclaimant such other and further legal or equitable relief as the Court deems just and proper.

## JURY DEMAND ON COUNTERCLAIMS

Counterclaimant demands a trial by jury on all issues and claims so triable.

Dated: September 28, 2026

Respectfully submitted,

*/s/ Conor M. Civins*
Conor M. Civins
Texas Bar No. 24040693
conor.civins@bracewell.com
Michael Chibib
Texas Bar No. 00793497
michael.chibib@bracewell.com
BRACEWELL LLP
111 Congress Avenue, Suite 2300
Austin, TX 78701-4061
Tel: (512) 472-7800
Fax: (800) 404-3970

**Counsel for Defendant Sports South LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on September 28, 2026, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system.

*/s/ Conor M. Civins*
Conor M. Civins